# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ALBERTO ESPINOLA, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09CV02090 HEA |
| | ) | |
| INGERSOLL RAND COMPANY, | ) | |
| JAMES WARDLAW, GORDON | ) | |
| SHAW, JIM KINGSLEY, CAROL | ) | |
| BLOOMFIELD, AND SARAH | ) | |
| GREENWOOD, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Ingersoll Rand Company
("IRC"), James Wardlaw, Gordon Shaw, Jim Kingsley. Carol Blomfield, and
Sarah Greenwood's (collectively "Defendants") Motion for Judgment on the
Pleadings [ECF No. 141] and Defendants' Motion for Summary Judgment [ECF
No. 86]. For the reasons set forth below, Defendants' Motion for Judgment on the
Pleadings is denied, and Defendants' Motion for Summary Judgment is granted in
part, and denied in part.

# **Factual Background**[1]

As an initial matter, "[t]he moving party bears the burden to demonstrate that there is no issue of material fact. The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of 'specific facts creating a triable controversy.' *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999). Simply providing a massive record does not satisfy this burden, and we will not sort through a voluminous record in an effort to find support for the plaintiff's allegations. *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113-14 (8th Cir. 2004) (per curiam). *See also Johnson v. City of Shorewood*, Nos. 02-3562/4081/03-2023, 2004 WL 405692, at *6 (8th Cir. Dec. 18, 2003) ('It is not a court's obligation to search the record for specific facts that might support a litigant's claim[.]')."

We consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact. *See Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003); Fed. R. Civ. P. 56(e)." *Howard v. Columbia Pub. Sch. Dist.*, __ F.3d __ (8th Cir. 4/13/2004). ('[A] district court is

---

[1] The Court's recitation of the facts is drawn form the parties' statements of material facts filed in conjunction with Defendants' motion for summary judgment and Plaintiff's opposition.

not "obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'") (internal citation omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal citation omitted); *c.f. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ('Judges are not like pigs, hunting for truffles buried in briefs.')." *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004).

In this case, both Plaintiff and Defendant submitted an excessive amount of "uncontroverted," "material facts"–most of which were not material to the case. The following facts were drawn from the parties' statement of facts, and deemed material by this Court.

IRC is a global diversified industrial firm providing products and services ranging from commercial and residential air conditioning to security systems, to industrial tools, to golf carts. Plaintiff Espinola was an employee of IRC from March, 2008 to August 31, 2009. At all times relevant to Plaintiff's Complaint, Defendants Bloomfield and Greenwood were Human Resources managers at IRC; Defendant Kingsley was the IRC's Director of Operations in the Asia Pacific region;  Defendant Wardlaw was IRC's Director of Global Operational

Excellence, Climate Control Technologies; and from July 2008 through the date of Espinola's termination, Defendant Shaw was the Director of Global Lean Six Sigma and Espinola's direct supervisor at IRC.[2]

Espinola was hired by IRC at its Bridgeton, Missouri headquarters, with an effective hire date of March 24, 2008. Defendants contend that Wardlaw was the IRC employee who hired him; however, Plaintiff claims it was either Rob Miller or Wardlaw–he is not sure. Upon his hiring, Espinola was assigned to the Climate Control Manufacturing Operations Excellence department of IRC with the title Regional Lean Six Sigma Deployment Leader. Espinola's position with IRC required a substantial amount of travel, including multiple trips to China. Upon his hire, Espinola received IRC's Code of Conduct and IRC's Harassment Policy. In 2008, Espinola submitted three separate forms reporting to IRC his personal information, including changes to his address.

On March 3, 2009, Espinola sent an email to Shaw and Wardlaw which stated that he would like to "base himself" in San Antonio, Texas and travel to Bridgeton only when his work would require it. According to Defendants, at the time of Espinola's request, there was no IRC facility in San Antonio. Defendants

---

[2]     Plaintiff agrees that Shaw became his supervisor in July 2008; however, he contends that between March 2008 and September 2008–when Shaw took over–Plaintiff had no direct supervisor.

contend–and Espinola testified that–Defendant Shaw spoke to Espinola via telephone and informed him that there will be work for him in St. Louis; therefore, San Antonio was probably not an option.[3]

On May 13, 2009, days after Espinola returned from working on a job in China, Defendant Shaw confronted Espinola and conducted a meeting with him at Ingersol's Bridgeton office. Shaw informed Espinola that he had received a complaint from a manager in China to the effect that Espinola was displaying disruptive behavior. At this time, Shaw discussed the possibility of Espinola taking a 360 evaluation. According to Defendants, a 360 evaluation was not any part of IRC's disciplinary policy, but was used as a voluntary tool for development purposes, designed to provide confidential feedback from peers and managers. On May 15, 2009, Defendants Shaw and Bloomfield met with Espinola to discuss the 360 evaluation in further detail. According to Defendants, and Espinola's testimony, no one ever told Espinola that he would be subject to a claim of insubordination if he did not submit to the 360 evaluation. Pursuant to their discussion at the May 15 meeting, Defendants claim that they arranged for Espinola to contact Rowena Hebert, a Manager of Talent Development, to act as a

---

[3]     Based on Espinola's testimony, Shaw's exact words were "I'm going to have work for you here in St. Louis so San Antonio is probably out." Defendants' Exh. 1, Espinola Dep., at 78.

third party point of contact coordinating the 360 evaluation. Subsequent to the meeting Hebert attempted to contact Espinola via email to initiate the evaluation; however, Hebert sent the email to the wrong person and Plaintiff didn't receive the initial email.

On or about August 7, 2009, Espinola visited an Atlanta Equal Employment Opportunity Commission ("EEOC") to discuss filing a charge of discrimination.[4] His official charge was filed with EEOC on August 11, 2009, and it alleged "I believe that I have been discriminated against because of my race (Mexican-American), and my national origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as amended." *See* Defendants' Exh. 58, EEOC Charge of Discrimination. The charge was in response to the proposed 360 evaluation. On August 10, 2009, Espinola, using IRC's online booking tool, booked an airline ticket to St. Louis for August 24 from San Antonio to St. Louis, with a return on August 28, 2009. Then, on August 15, 2009, Espinola emailed Defendant Shaw and copied Wardlaw stating he had fallen ill, and given the symptoms he was experiencing, he was not optimistic about the future. On August 19, 2009, Shaw responded to Espinola via email and told him to take care of his health, and to

---

[4]     Defendants' Statement of Uncontroverted Material Facts asserts that Plaintiff went to EEOC on August 6, 2009; however, Plaintiff's Response contends that he went to EEOC on August 7, 2009. Plaintiff's PLNT-OPPO-SUM Exhibit A confirms that he actually went to EEOC on August 7, 2009.

keep him informed regarding when he would return to work. Also on August 19, Espinola filed an amended charge of discrimination with EEOC, which further alleged retaliation. On August 24, 2009, Plaintiff Espinola received a telephone call from Defendant Sarah Greenwood informing him that he was being terminated for insubordination. The alleged insubordinate conduct in question stemmed from Espinola's relocation to San Antonio, Texas. On September 10, 2009, Espinola amended his charge of discrimination again, adding that he was discharged on August 24, 2009.

## Discussion

### *Defendants' Motion for Judgment on the Pleadings*

Defendants have filed a Motion for Judgment on the Pleadings [ECF No. 141] with regard to Plaintiff's Missouri Human Rights Act ("MHRA") claims, to which Plaintiff responded [ECF No. 155], Defendants further replied [ECF No. 156], and Plaintiffs filed a sur-reply [ECF No. 161] For the reasons set forth below, Defendants' motion is denied.

Rule 12(c) of the Federal Rules of Civil Procedure establishes that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to

judgment as a matter of law." *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir.2002) (citing *United States v. Any & All Radio Station Transmission Equip.,* 207 F.3d 458, 462 (8th Cir.2000)). When presented with a motion for judgment on the pleadings, a district court must " 'accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor.' " *Ashley County, Ark. v. Pfizer, Inc.,* 552 F.3d 659, 665 (8th Cir.2009) (quoting *Wishnatsky v. Rovner,* 433 F.3d 608, 610 (8th Cir.2006)).

The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Ashley County, Ark.,* 552 F.3d at 665. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting *Twombly*, 550 U.S. at 556) "Where a complaint pleads facts that are

merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation mark omitted).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Id. at 1950-51. These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

Defendants have filed a Motion for Judgment on the Pleadings with regard to Plaintiff's MHRA claims, alleging that Plaintiff has failed to meet jurisdictional prerequisites for filing a lawsuit pursuant to the MHRA. Plaintiff opposes the motion by relying on Mo. Rev. Stat § 213.075(2), which reads as follows:

> Any complaint which is filed with the federal Equal Opportunity commission or other federal agencies with which the commission has a work-sharing or deferral agreement, or with a local commission which as been certified as substantially equivalent by the commission, shall be deemed filed with the commission on the date that such complaint is received by such federal agency or local commission. ...

Further, Plaintiff Espinola attached as exhibit his official right to sue letter provided by the Missouri Commission on Human Rights ("MCHR"). *See* ECF No. 161, Exh. C. To initiate a claim under MHRA, a party must timely file an administrative complaint with MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter. *Stuart v. General Motors Corp.,* 217 F.3d 621, 630 (C.A.8 (Mo), 2000); *Alhalabi v. Missouri Dept. of Natural Resources,* 300 S.W.3d 518, 524 (Mo.App.2009); Mo.Rev.Stat. §§ 213.075(2), 213.111(1). Before applying to the courts for relief, all remedies must be exhausted at the administrative level. *Id.* When MHRA claims are involved, appellate courts are guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814 (Mo. 2007). Because Plaintiff has provided his right to sue letter

issued by MCHR, he has followed the proper state administrative procedure. As such, Defendants' Motion for Judgment on the Pleadings is denied.


### *Liability of Individual Defendants*

In addition to IRC, Plaintiff Espinola named James Wardlaw, Gordon Shaw, Jim Kingsley, Carol Bloomfield and Sarah Greenwood as individual defendants in his Title VII claims. Pursuant to 42 U.S.C. § 2000e(b), liability can only attach to employers, not individual employees. *See also Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) (Title VII addresses the conduct of employers only and does not impose liability on coworkers. Civil Rights Act of 1964, § 701 et seq.). As such, Espinola's claims against Defendants Wardlaw, Shaw, Kingsley, Bloomfield, and Greenwood shall be dismissed.

### **Summary Judgment Standard - Employment Discrimination**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the

burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence setting forth specific facts that show a genuine issue of material fact exists. Fed.R.Civ.P. 56(c). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehabilitation Center at Good Shepherd, LLC*, 471 F.3d 843, 846 (8th Cir.2006) (citation omitted). "To successfully parry the defendants' motion for summary judgment, [Plaintiff] must put forth either (1) proof of 'direct evidence' of discrimination; or (2) a prima facie case of unlawful discrimination through circumstantial evidence under the *McDonnell Douglas* burden-shifting test, and then rebutting any proffered nondiscriminatory reasons

for the employment decision with sufficient evidence of pretext. *Griffith*, 387

F.3d at 736." *King v. Hardesty,* 2008 WL 539238, 4 (8th Cir. 2008).

Direct evidence in this context must be strong enough to show "a specific

link between the [alleged] discriminatory animus and the challenged decision,

sufficient to support a finding by a reasonable fact finder that an illegitimate

criterion actually motivated" the employment decision. *Thomas v. First Nat'l*

*Bank of Wynne,* 111 F.3d 64, 66 (8th Cir.1997) (internal quotations omitted). If

"the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the

defendant's motion for summary judgment by creating an inference of unlawful

discrimination under the burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McGinnis v. Union Pacific R.R.*,

496 F.3d 868, 873 (8th Cir.2007). "Under the McDonnell Douglas framework, a

presumption of discrimination is created when the plaintiff meets his burden of

establishing a prima facie case of employment discrimination. A minimal

evidentiary showing will satisfy this burden of production." *Davis v. KARK-TV,*

*Inc.,* 421 F.3d 699, 704 (8th Cir.2005). To establish his prima facie case of racial

discrimination, Plaintiff must show: 1) he is a member of a protected class; 2) he

met her employer's legitimate expectations; 3) he suffered an adverse employment

action; and 4) similarly situated employees who were not members of the

protected class were treated differently. *Tolen v. Ashcroft*, 377 F.3d 879, 882

(C.A.8 (Mo), 2004).  Under this framework, Plaintiff bears the burden of

establishing a prima facie case of discrimination.  *McGinnis,* 496 F.3d at 873

(citation omitted).

"The establishment of a *prima facie* case creates a presumption of unlawful

discrimination, which in turn requires a defendant to come forward with evidence

of a legitimate, nondiscriminatory reason for the defendant's actions."  *Id*. (citation

omitted).  "If the defendant articulates such a reason, the burden returns to the

plaintiff to show the defendant's proffered reason is pretextual."  *Id*. (citation

omitted).

### *Plaintiff's Disparate Treatment Claim Under Title VII*

Plaintiff alleges disparate treatment under Title VII and under the MHRA.

The Court will address his Title VII claim first. Plaintiff has not offered any direct

evidence of discrimination, therefore, he must show an inference of unlawful

discrimination under the burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *McGinnis v. Union Pacific R.R.*,

496 F.3d 868, 873 (8th Cir.2007).  In his Complaint, Plaintiff contends that he was

discriminated against when he was directed by Gordon Shaw of IRC to participate

in the 360 performance evaluation, and was given a deadline to complete the

evaluation. In applying the *prima facie* elements of race and national origin discrimination, the Court notes that neither party disputes whether Plaintiff has proved the first element of the test: Plainitff is a 61 year old Mexican-American, therefore, he is a member of a protected class .[5]

Defendants do contend, however, that Plaintiff has failed to establish the second element of a *prima facie* case. They argue that Espinola did not show that he satisfied IRC's legitimate expectations because he engaged in disruptive behavior, insubordination, and abandoned his job. To support this claim, Defendants cite to statements from multiple IRC employees, and individuals that worked with IRC on a regular basis, who complained of Espinola's disruptive behavior. Based on deposition testimony given by Gordon Shaw, Espinola's supervisor, he was getting negative feedback from job sites where Espinola was assigned. Shaw stated that Jim Kingsley, who worked with Espinola in China, complained that Espinola was argumentative, displayed disruptive behavior, pitted people against each other, and was overly demanding. *See* Def Exh. 7, Shaw Dep., at 78-82. Shaw testified that Kingsley received these complaints from Chris Walmsley, Evren Akcora, and Grace Zhang–all employees who worked Plaintiff in China. Shaw further testified that he personally received complaints from Katie

---

[5]        The Court realizes that Espinola's age may have changed throughout the course of this litigation; however, his age is not an issue in this case.

Borrer in Louisville, who told him that Espinola was being disruptive, argumentative, not conducive to working on a team, demanding, and pitted people against each other. *See Id.* Shaw also testified that he received direct correspondence from Manuel Suarez and Ron Jacubek, both assigned at an IRC job in Chino, California, complaining about Espinola.

The testimony offered by Jim Kingsley during his deposition confirmed Shaw's testimony: Kingsley received complaints directly from Walmsley, Akcora, and Zhang regarding Espinola's behavior. Kingsley further testified that John Fenlon also complained to him, stating that Espinola was difficult to work with. *See* Def. Exh. 9, Kingsley Dep., at 14-16. The deposition testimony off all these individuals establishes that Espinola engaged in a pattern of disruptive work behavior–a pattern that failed to meet the IRC's legitimate expectations.

Defendants contend that Espinola's abandonment of his job is what ultimately led to his termination. As the facts show above, in March of 2009, Espinola emailed his direct supervisor, Gordon Shaw, and sought permission to "base himself" in San Antonio, and relocate from the St. Louis/Bridgeton site. According to Espinola's deposition testimony, Shaw contacted Espinola via telephone and stated, " I think I'm going to have work for you here in St. Louis, so San Antonio is probably out." Def. Exh 1, Espinola Dep., at 78. Plaintiff

responded, "okay, okay, Gordon [Shaw]." *Id.* It also undisputed that in 2008, Espinola submitted three separate forms reporting to IRC his personal information, including changes to his address. In March 2009, however, Espinola relocated to Texas and failed to submit forms reporting his change of address. In his deposition, Espinola contends that he merely "procrastinated" in notifying IRC of his change of address. On August 4, 2009, over two months after his relocation to Texas, Tammy Turner emailed Espinola and asked if he was still working out of the St. Louis location. Def. Exh. 48. Espinola responded that same day stating, "I'm no longer working out of St. Louis location." *Id.*

These facts alone show that Espinola never received permission from his supervisor, Gordon Shaw, to relocate to San Antonio. In fact, they show that Espinola went against Shaw's direct orders. Espinola offers no evidence showing he had his supervisor's permission to relocate to San Antonio. As such, Espinola failed to show that he met IRC's legitimate expectations by abandoning his job.

With regard to the third element required to prove a *prima facie* case, Espinola's termination is the only adverse employment action he experienced. Espinola argues that the proposed 360 evaluation also constitutes an adverse employment action. The Court finds that the evaluation falls short of the activity covered by the *prima facie* test. As the undisputed facts state above, Espinola

never participated in the evaluation, and no one ever told him that he would be subject to a claim of insubordination if he did not submit to the 360 evaluation.

With regard to the fourth element required to prove a *prima facie* case of disparate treatment, Espinola relies on the Eighth Circuit's *Lake v. Yellow Transp., Inc.,* 596 F.3d 871 (C.A.8 (Minn.). 2010), and suggests that evidence of pretext can be presumed through a showing that IRC failed to follow its own policies.[6] In the *Lake* case, the Eighth Circuit held that "[a] plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Id.* at 874.

Espinola alleges that the 360 evaluation was a violation of IRC's own policy by using it as a tool to gather facts, by Shaw requiring him to engage in the evaluation, and by Rowena's overview of the process. This argument fails. According to deposition testimony by Wardlaw, Shaw, and Bloomfield, and a sworn affidavit by Greenwood, a 360 evaluation was not any part of IRC's disciplinary policy, but was used as a voluntary tool for development purposes, designed to provide confidential feedback from peers and managers. Based on

---

[6] The Eighth Circuit has held that evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis, can satisfy the inference-of-discrimination element of the *prima facie* case. *Putman v. Unity Health Sys.,* 348 F.3d 732, 736 (8th Cir.2003).

sworn affidavits in the record, both Greenwood and Kingsley participated in their own 360 evaluation and both individuals stated that they have never been disciplined in any way. *See* Def. Exh. 25, Greenwood Aff. and Def. Exh. 41, Kingsley Aff. The evaluation is conducted by an outside resource and paid for by IRC. Espinola has provided no evidence that the 360 evaluation violates IRC's policies, or that similarly situated employees were treated in a disparate manner. Under this analysis, Plaintiff's reliance on the *Lake* case to prove the fourth *prima facie* element fails.

Plaintiff has failed to establish a *prima facie* case that creates a presumption of unlawful discrimination. Assuming *in arguendo* that he was able to establish such, Defendants put forward evidence of legitimate, non-discriminatory reasons for Plaintiff's termination–Espinola's disruptive behavior and the job abandonment. As such, the burden returns to Plaintiff to show IRC's decision to terminate him was pretextual. *McGinnis,* 496 F.3d at 873 . Plaintiff has failed to offer any evidence that he was treated differently than similarly situated non-Hispanic and non-Mexican employees. He acknowledged in his deposition that no IRC employee ever said anything to him about his race, national origin, ethnicity, color of skin, or ancestry. As such, Defendants' Motion for Summary Judgment on Plaintiff's disparate treatment claim shall be granted.

### *Plaintiff's Disparate Treatment Claim under MHRA*

Because Plaintiff asserts claims under the MHRA, the Court also looks to Missouri law in resolving Defendant's Motion. Under the MHRA, an employer is prohibited from discharging or otherwise discriminating against an individual based on, among other things, race and age. Mo.Rev.Stat. § 213.055. The MHRA defines "discrimination" as "any unfair treatment based on [race, ... ]as it relates to employment" Mo.Rev.Stat. § 213.010(5). In *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 820-21 (Mo.2007) (en banc), the Missouri Supreme Court held that a discrimination claim survives summary judgment "if there is a genuine issue of material fact as to whether [race and/or age] was a 'contributing factor' in [defendant's] termination decision." *Id.* at 820; *Baker v. Silver Oak Senior Living Mgmt. Co.,* 2007 WL 2994318, at *7 (W.D.Mo. Oct.11, 2007)(analyzing age discrimination claim brought under MHRA using contributory factor test).

*Daugherty* rejected defendant's argument in that case that the burden-shifting analysis that *McDonnell Douglas* requires be applied to Title VII cases to make out an indirect federal discrimination claim applies to claims of harassment under state law. Rather, *Daugherty* teaches, the right to sue under Missouri law is quite naturally governed by the relevant Missouri statute, the MHRA. That statute:

defines "discrimination" to include "*any* unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Section 213.010(5) (emphasis added). *Daugherty* further stated that courts must look to Missouri Approved Jury Instruction 31.24 to determine the elements a plaintiff must prove to prevail on an employment discrimination claim. Under MAI 31.24, Espinola must establish that 1) Defendants terminated Plaintiff, 2) that Plaintiff's race was a contributing factor in his termination, and 3) as a direct result of the evaluation and termination, Plaintiff suffered damage.

As discussed above, Espinola offers no evidence that his race was a contributing factor that lead to his ultimate termination. And Plaintiff has no evidence rebutting IRC's legitimate non-discriminatory reasons for its action. Further, Espinola has failed to offer any evidence that shows his termination was a pretext for intentional discrimination. Espinola admitted that no one at IRC ever said anything to him about his national origin or race, . Because Plaintiff has failed to provide *any* circumstance of unfair treatment based on his race, Defendants' Motion for Summary Judgment with regard to Espinola's disparate treatment claim is granted.

### *Plaintiff's Title VII Retaliation Claim*

Espinola contends that he was terminated due to his discrimination charge he filed with the EEOC. To establish a *prima facie* case of unlawful retaliation, plaintiff must establish that 1) he complained of discrimination; 2) Defendants took adverse action against him; 3) the adverse action was causally linked to the complaint of discrimination. *Marzec v. Marsh,* 990 F.2d 393, 396 (8th Cir. 1993). There is no question that on or about August 7, 2009, Espinola visited an Atlanta Equal Employment Opportunity Commission ("EEOC") to discuss filing a charge of discrimination, which was ultimately filed on August 11, 2009. On August 19, Espinola filed an amended charge of discrimination with EEOC, which further alleged retaliation. Five days later, on August 24, Sarah Greenwood of IRC called Espinola and informed him that he had been terminated. With these facts in mind, Espinola has met the first two elements of a *prima facie* retaliation claim: he complained of discrimination when he filed his EEOC charge, and he suffered adverse employment action when IRC terminated him. With regard to the third element of the *prima facie* case, "[t]he requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Rath v. Selection Research, Inc.*, 978 F.2d 1087 (8th Cir.1992). Under this analysis, Plaintiff has met the all of the *prima facie* elements. The fact the he was terminated a mere five

days after he amended his EEOC charge, justifies an inference of retaliatory

motive. As such, Defendant's request for summary judgment with regard to

Espinola's retaliation claim is denied.

### *Plaintiff's MHRA Retaliation Claim*

As discussed above, the fact that Plaintiff was terminated such a short

time after filing his EEOC charge justifies an inference of retaliatory motive on

behalf of IRC. *See Id.; See also Eckelkamp v. Beste*, 201 F.Supp.2d 1012, 1032

(E.D.Mo.2002).

### <u>Conclusion</u>

For the reasons indicated, Plaintiff Espinola's claims against individual

defendants James Wardlaw, Gordon Shaw, Jim Kingsley, Carol Bloomfield and

Sarah Greenwood shall be dismissed. Additionally, the Court finds that

Defendants' Motion for Judgment on the Pleadings shall be denied because

Plaintiff showed the followed the proper administrative procedure by obtaining a

right to sue letter from the MCHR. The Court will grant Defendants' Motion for

Summary Judgment with regard to Espinola's disparate treatment claim because

he failed to establish a *prima facie* case under the *McDonnel Douglass* framework.

Additionally, the Court will  grant Defendants' Motion for Summary Judgment

with regard to Espinola's MHRA disparate treatment claim because he failed to

establish that racial discrimination was a contributing factor to his termination. Espinola was able to establish a *prima facie* case with regard to his Title VII and MHRA retaliation claims; therefore, Defendants' Motion for Summary Judgment on Plaintiff's retaliation claims is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings shall be **DENIED**.

**IT IS FURTHER ORDERED** that individual defendants James Wardlaw, Gordon Shaw, Jim Kingsley, Carol Bloomfield and Sarah Greenwood shall be **DISMISSED** as parties.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with regard to Plaintiff Espinola's Title VII disparate treatment claim is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with regard to Plaintiff Espinola's MHRA disparate treatment claim is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with regard to Plaintiff Espinola's Title VII and MHRA retaliation claims is **DENIED.**

Dated this 8th day of March, 2012.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE